**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| In re: <br><br> HARRY NEAL MCMILLAN, <br><br> Dismissed Debtor. <br> _____ <br><br> HARRY NEAL MCMILLAN, <br><br> Plaintiff, <br><br> v. <br><br> LAWRENCE MAESTRI, DONAL R. SCHMIDT, and THIMOTHY S. WAFFORD, <br> Defendants. | ) <br> ) <br> ) Bankruptcy Case No. 11-47029-DML <br> ) <br> ) Involuntary Chapter 7 <br> ) <br> ) Adv. Pro. No. 15-_____ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT FOR ATTORNEYS FEES, COSTS AND DAMAGES PURSUANT TO 11 U.S.C. § 303(i)**

The Dismissed Debtor, Harry Neal McMillan ("McMillan"), through his undersigned attorneys, for his Complaint against the Defendants Lawrence Maestri, Donal R. Schmidt and Thimothy S. Wafford, states as follows:

**PARTIES**

1. Plaintiff McMillan is an individual residing at 221 Ridgeview Lane, Trophy Club, Texas 76262.

2. Defendant Donal R. Schmidt ("Schmidt") is an individual with a last known address at 7402 Wentwood Drive, Dallas, Texas, 75225 and whose principal place of business as an attorney is 5646, Milton Street, Suite 130, Dallas, Texas, 75206.

1

3. Defendant Thimothy S. Wafford ("Wafford") is an individual with a last known address in the County of Dallas, Texas, and whose principal place of business is 5646, Milton Street, Suite 130, Dallas, Texas, 75206.

4. Defendant Lawrence Maestri is an individual with a last known address of 7601 Copperfield Court, Baton Rouge, Louisiana, 70808.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334(b), as this case arises under title 11 of the United States Code.

6. This Court has the power to adjudicate the Claims for Relief as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(O) and Article I of the United States Constitution.

7. Venue of this action is proper in this District pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND FACTS

8. On December 16, 2011, Thomas Aigner ("Aigner") entered into a Joint Prosecution Agreement (the "Agreement") with Schmidt and Wafford. In summary, the Agreement provides that Aigner is required to file an involuntary bankruptcy petition against McMillan, for which Schmidt and Wafford shall pay the reasonable and necessary costs and legal fees. Schmidt and Wafford were ceded sole authority to select bankruptcy counsel and control the prosecution of Aigner's claims in the bankruptcy case. An accurate and complete copy of the Agreement is attached as Exhibit A.

9. On December 21, 2011, Aigner signed an involuntary petition for relief (the "Petition") against McMillan, which petition was filed in the U.S. Bankruptcy Court for the Northern District of Texas-Fort Worth Division, where it was assigned Case No. 11-47029-dml.

10. On January 12, 2012, McMillan answered the involuntary petition and counterclaimed against Aigner for costs, fees, and actual and punitive damages pursuant to 11 U.S.C. § 303(i).

11. On February 2, 2012, an Amended Involuntary Petition was filed adding Fusion Labs, Inc., and Lawrence Maestri ("Maestri") as petitioning creditors together with Aigner. By Order dated March 20, 2012, this Court permitted Fusion Labs, Inc., to withdraw with the consent of McMillan.

12. Despite having signed the Amended Petition, Maestri never appeared or otherwise participated in the case except to respond to McMillan's discovery, and no evidence was ever presented to the Court as to the nature of any claim he purportedly held against McMillan. His claim was in fact in bona fide dispute as to liability and amount.

13. This Court held evidentiary hearings on the Petition (the "Hearings") over the course of nine non-consecutive days on August 6 and 7, 2012, October 15 and 17, 2012, December 10, 2012, February 20 and 21, 2013, March 20, 2013, and April 8, 2013.

14. On June 4, 2013, this Court entered its Memorandum Opinion (the "Order," at bankruptcy court docket no. 70), dismissing the Petition after finding that the Agreement effectuated a "transfer" of a claim for purposes of Fed. R. Bankr. P. 1003(a) and thus precluded Aigner from being a qualified petitioner. The Court further explained that "[i]t makes good sense that an arrangement such as that evidenced by the Agreement should be disfavored" given the Court's determination that the prime mover for involuntary relief was Sun River Energy, Inc. ("Sun River"), for which Schmidt acted as CEO and Wafford as CFO, in the ongoing war against McMillan by Sun River, Schmidt, and Wafford.

15. In dismissing this involuntary case, this Court specifically found that "control over prosecution of the involuntary case against McMillan is largely ceded to Schmidt and Wafford." Order at 13. The Agreement obligates Aigner to commence the involuntary case against McMillan and Schmidt and Wafford "have *sole authority to … control the prosecution of* [Aigner's] *claims* . . . ." ¶¶ 2, 4 (emphasis added). Additionally, both the Agreement and Schmidt and Wafford's control over Sun River as a claimant in the involuntary case limit Aigner's ability to settle his claims. Upon entering the Agreement Aigner thus was in large part not in control of any actions as a petitioner in the involuntary case. "Rather, Schmidt and Wafford have the power under the [Litigation] Agreement to force and maintain prosecution of the Case." *Id.*

16. In its Order, the Court also found that Aigner did not act in bad faith for purposes of 11 U.S.C. § 303(i)(2) and dismissed McMillan's counterclaim to the extent consistent with this finding. Otherwise, "the [C]ourt retain[ed] jurisdiction to determine any costs or fees to be awarded to McMillan under Code section 303(i)(1)."

## DAMAGES SUFFERED BY MCMILLAN AS A RESULT OF INVOLUNTARY PETITION

17. In response to the Petition, McMillan was required to immediately retain expert bankruptcy counsel. Upon retention, McMillan's counsel was required to render extensive services in an effort to help McMillan avoid Schmidt and Wafford's attempt to manipulate the involuntary case as leverage as part of the broader disputes with McMillan regarding Sun River and the destruction of McMillan's finances and ongoing businesses.

18. As of the date of this Complaint, McMillan has incurred attorneys' fees as a result of the Petition amount to approximately $180,000 and costs of approximately $5,000.

19. All attorneys' fees and costs incurred were reasonable, necessary and appropriate under the circumstances. The fees are based on actual time spent charged at counsel's ordinary billing rates in effect at the time the services were rendered.

20. The Petition also impaired McMillan's business reputation and his ability to conduct business.

## FIRST CLAIM FOR RELIEF

21. McMillan incorporates the allegations set forth in paragraphs 1 through 20 of this Complaint as if fully set forth herein.

22. Bankruptcy Code § 303(i) provides:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right of judgment under this subsection, the court may grant judgment—
>
> (1) against the petitioners and in favor of the debtor for—
>
> (A) costs; or
>
> (B) a reasonable attorney's fee . . . .

23. Maestri is a "petitioner," having signed the Amended Petition. He has never made any attempt to withdraw or to be dismissed from the case.

24. Whereas Maestri did not actively participate in the case, by signing the Amended Petition, he sought to place McMillan into bankruptcy and undertook the risk associated with his actions, seeking whatever reward he perceived would result from the entry of an order for relief.

25. In addition to recovering attorneys' fees and costs incurred in defending and obtaining the dismissal of the involuntary petition, McMillan is entitled to recover the fees and costs he has incurred and will continue to incur in prosecuting his request for fees and costs resulting from the Petition.

WHEREFORE, McMillan respectfully prays the Court to enter an order awarding attorney's fees and costs pursuant to 11 U.S.C. § 303(i)(1) against Maestri and awarding such other relief as the Court deems proper.

## SECOND CLAIM FOR RELIEF

26. McMillan incorporates the allegations set forth in paragraphs 1 through 25 of this Complaint as if fully set forth herein.

27. Schmidt and Wafford caused the Petition to be filed to achieve their own ends and the ends of Sun River, either as a creditor with a disputed claim or otherwise. The Agreement ceded control of the filing and the prosecution of the case to Schmidt and Wafford.

28. Schmidt and Wafford controlled Aigner's actions with respect to commencing and litigating the involuntary bankruptcy against McMillan. The Agreement obligates Aigner to file the Petition in exchange for Schmidt and Wafford paying the costs associated with litigating the Petition and to transfer control of the ensuing case to Schmidt and Wafford.

29. As parties who jointly prosecuted the Petition, Schmidt and Wafford became "petitioners" for purposes of § 303(i).

WHEREFORE, McMillan respectfully prays the Court to enter an order awarding attorney's fees and costs pursuant to 11 U.S.C. § 303(i)(1) jointly and severally against Schmidt, and Wafford, and awarding such other relief as this Court deems proper.

## THIRD CLAIM FOR RELIEF

30. McMillan incorporates the allegations set forth in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31. Under the Joint Prosecution Agreement, Schmidt and Wafford were the principals who controlled Aigner as their agent in the case.

32. As principals, Schmidt and Wafford become petitioners within the meaning of 11 U.S.C. § 303(i)(1).

WHEREFORE, McMillan respectfully prays the Court to enter an order awarding attorney's fees and costs pursuant to 11 U.S.C. § 303(i)(1) jointly and severally against Schmidt, and Wafford, and awarding such other relief as this Court deems proper.

## **FOURTH CLAIM FOR RELIEF**

33. McMillan incorporates the allegations set forth in paragraphs 1 through 32 of this Complaint as if fully set forth herein.

34. In the alternative, under the Joint Prosecution Agreement, Schmidt and Wafford were Aigner's agents for purposes of prosecuting the involuntary case.

35. As such, Schmidt and Wafford become petitioners within the meaning of 11 U.S.C. § 303(i)(1).

WHEREFORE, McMillan respectfully prays the Court to enter an order awarding attorney's fees and costs pursuant to 11 U.S.C. § 303(i)(1) jointly and severally against Schmidt, and Wafford, and awarding such other relief as this Court deems proper.

## **FIFTH CLAIM FOR RELIEF**

36. McMillan incorporates the allegations set forth in paragraphs 1 through 35 of this Complaint as if fully set forth herein.

37. Factors establishing a partnership/joint venture relationship under Texas law are

> (1) receipt or right to receive a share of profits of the business; (2) expression of intent to be partners in the business; (3) participation or right to participate in control of the business; (4) sharing or agreeing to share: (A) losses of the business or (B) liability for claims by third parties against the business; and (5) contributing or agreeing to contribute money or property to the business.

7

38. The arrangement under the Agreement constitutes a relationship in which (1) Aigner performed the service of filing the Petition in exchange for receiving the pecuniary benefit of not initially bearing the out-of-pocket expense associated with prosecuting it; (2) Schmidt and Wafford contributed property, namely the expenses, towards a common venture of litigating claims against McMillan through involuntary bankruptcy proceedings, and (3) Schmidt and Wafford contributed their services in managing the case.

39. Further, Aigner, Schmidt and Wafford agreed to share profits and losses: Schmidt and Wafford agreed to bear the risk of loss of the expenses should Aigner recover nothing from McMillan, and Aigner agreed to share the first dollars collected in the bankruptcy case to alleviate Schmidt's and Wafford's expenses. In addition, the inherent nature of a bankruptcy case causes all creditors to share in the benefits thereof (assuming there are any benefits). The Joint Prosecution Agreement thus created a joint venture between Aigner, Schmidt and Wafford.

40. The fees and costs due to McMillan are an obligation of the joint venture because they were a liability incurred in the conduct of the business of the joint venture, namely the prosecution of the Petition.

41. As joint venturers, Schmidt and Wafford are jointly and severally liable for the obligations of the joint venture.

42. As such, Schmidt and Wafford become petitioners within the meaning of 11 U.S.C. § 303(i)(1).

WHEREFORE, McMillan respectfully prays the Court to enter an order awarding attorney's fees and costs pursuant to 11 U.S.C. § 303(i)(1) jointly and severally against Schmidt, and Wafford, and awarding such other relief as this Court deems proper.

## SIXTH CLAIM FOR RELIEF

43. McMillan incorporates the allegations set forth in paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44. Bankruptcy Code § 303(i) provides:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right of judgment under this subsection, the court may grant judgment—
> . . .
>   (2) against any petitioner that filed the petition in bad faith, for—
>     (A) any damages proximately caused by such filing; or
>     (B) punitive damages.

45. Schmidt and Wafford engaged in bad faith tactics by entering into the Agreement as a means, among other things, of manipulating the Bankruptcy Code and the Court's jurisdiction to harass and impose substantial legal costs on McMillan, destroy his reputation and ability to conduct his businesses, to impair his relationships with other Sun River shareholders and potential sources of funding, to deflect blame for their mismanagement of and breaches of fiduciary duty toward Sun River, and to extort McMillan's ownership interest in Sun River.

46. Schmidt's and Wafford's wrongful commencement of the involuntary bankruptcy case against McMillan constitutes bad faith.

47. Maestri's conduct constitutes bad faith because he never appeared or otherwise participated in the case except to respond to McMillan's discovery, and no evidence was ever presented to the Court as to the nature of any claim he purportedly held against McMillan. Maestri was fully aware that his claim was in fact unliquidated and in bona fide dispute as to liability and amount, and that he was therefore not qualified to be a petitioner.

48. While actual damages were incurred in this case, punitive damages may be awarded whether or not actual damages were incurred.

9

WHEREFORE, McMillan respectfully prays the Court to enter an order awarding McMillan punitive damages jointly and severally against Maestri, Schmidt, and Wafford, and awarding such other relief as this Court deems proper.

Dated August 5, 2015

Respectfully submitted,

ONSAGER | GUYERSON | FLETCHER | JOHNSON, LLC

/s/ Christian C. Onsager
Christian C. Onsager, CO#6889
1801 Broadway, Suite 900
Denver, Colorado 80202
Telephone: (303) 512-1123
Facsimile: (303) 512-1129
E-Mail: consager@ogfj-law.com

ANDERSON TOBIN, PLLC

/s/ Aaron Z. Tobin
Aaron Z. Tobin
Texas Bar No. 24028045
One Galleria Tower
13355 Noel Road, Suite 1900