

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 8, 2016**



**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HARRY NEAL MCMILLAN, | § | CASE NO. 11-47029-MXM |
| | § | |
| DISMISSED DEBTOR. | § | CHAPTER 7 |
| | § | |

| | | |
|---|---|---|
| HARRY NEAL MCMILLAN, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | ADVERSARY NO. 15—04066-MXM |
| | § | |
| LAWRENCE MAESTRI, DONAL R. SCHMIDT | § | |
| AND THIMOTHY WAFFORD, | § | |
| | § | |
| DEFENDANTS. | § | |

**<u>MEMORANDUM OPINION ON ORDER GRANTING MOTION TO DISMISS</u>**

The Court dismissed an involuntary petition against Harry McMillan because the creditor who filed it was not a qualified petitioner. McMillan then sued Donal Schmidt and two other defendants under 11 U.S.C. § 303(i), which provides that after a contested dismissal of an involuntary petition, a bankruptcy court may grant judgment for fees and costs against "the petitioners,"[1] and a judgment for actual and punitive damages against "any petitioner" that filed the petition in bad faith.[2] Before the Court now is Schmidt's motion to dismiss the complaint under Federal Civil Rule 12(b)(6)[3] on the ground that Schmidt did not sign and file the involuntary petition and thus cannot be liable as a "petitioner" under § 303(i). The Court agrees with Schmidt and therefore will grant his motion.

## I.     Background[4]

Defendants Donal Schmidt and Thimothy Wafford were officers of Sun River Energy, Inc. They had a falling-out with Plaintiff Harry McMillan, a Sun River shareholder and consultant. On December 16, 2011, Schmidt and Wafford entered into a Joint Prosecution Agreement with Thomas Aigner, an unrelated judgment creditor of McMillan. Pursuant to the Joint Prosecution Agreement, Schmidt, Wafford, and Aigner agreed, in relevant part, that—

---

[1] 11 U.S.C. § 303(i)(1).

[2] 11 U.S.C. § 303(i)(2).

[3] Adv. ECF No. 8. "Adv. ECF No." refers to the docket number of pleadings filed in this adversary proceeding, and "Bankr. ECF No." refers to the docket number of pleadings filed in McMillan's dismissed bankruptcy case.

[4] This background is drawn from allegations in McMillan's complaint [Adv. ECF No. 1], from the Joint Prosecution Agreement referred to in the complaint, and from publicly-available filings in McMillan's involuntary bankruptcy case and this adversary proceeding. *See Funk v. Stryker Corp.*, 631 F.3d 777, 782-83 (5th Cir. 2011) (in Rule 12(b)(6) context, court may consider documents incorporated into the complaint by reference, and matters of which a court may take judicial notice, including the filing of publicly-available documents). The Joint Prosecution Agreement is supposed to be attached to McMillan's complaint as Exhibit A, but the document is not included in his filing. The Joint Prosecution Agreement was admitted into evidence as McMillan's exhibit number 58 in the involuntary-petition trial.

- Aigner would file an involuntary bankruptcy petition against McMillan;

- Schmidt and Wafford would have authority to select bankruptcy counsel and control the prosecution of Aigner's claims in the bankruptcy, except that Aigner would retain the right to settle his claims; and

- Schmidt and Wafford would pay the reasonable and necessary costs and fees of prosecuting Aigner's claims in the bankruptcy, but they would be reimbursed from any recovery on Aigner's claims.[5]

On December 21, 2011, Aigner signed and filed with this Court an involuntary bankruptcy petition against McMillan,[6] who answered the petition and counterclaimed against Aigner for fees, costs, and actual and punitive damages pursuant to 11 U.S.C. § 303(i).[7] Aigner filed an amended involuntary petition on February 2, 2012 with two additional petitioning creditors, Fusion Labs, Inc. and Lawrence Maestri.[8] The Court later permitted Fusion Labs to withdraw as a petitioning creditor with McMillan's consent,[9] leaving Aigner and Maestri as the only two petitioning creditors.

The Court held an evidentiary hearing on the involuntary petition and the counterclaim that lasted over nine nonconsecutive days. In a Memorandum Opinion entered on June 4, 2013, the Court concluded that it would dismiss the involuntary petition because the Joint Prosecution Agreement effectuated a "transfer" of a portion of Aigner's claims under Bankruptcy Rule

---

[5] The Joint Prosecution Agreement is described in more detail in the Court's June 4, 2013 Memorandum Opinion. Bankr. ECF No. 70 (June 4, 2003 Memorandum Opinion) (J. Lynn), *reported at Aigner v. McMillan*, Case No. 11-47029-DML-7, 2013 WL 2445042, at *2-3 (Bankr. N.D. Tex. June 4, 2013) (J. Lynn).

[6] *Involuntary Petition*, Bankr. ECF No. 1.

[7] *Answer to Involuntary Petition and Counterclaim*, Bankr. ECF No. 11.

[8] *Amended Involuntary Petition*, Bankr. ECF No. 16.

[9] *Agreed Motion to Permit Withdrawal of Petitioning Creditor Fusion Labs, Inc.*, Bankr. ECF No. 20; *Order Granting Agreed Motion to Permit Withdrawal of Petitioning Creditor Fusion Labs, Inc.*, Bankr. ECF No. 21.

1003(a), thus precluding Aigner from being a qualified petitioner.[10] The Court then considered and denied McMillan's request for actual and punitive damages against Aigner under § 303(i)(2), finding that Aigner did not file the petition in bad faith.[11] In a footnote, the Court noted: "This is not to say that Sun River, Schmidt, and Wafford did not act other than in good faith, but they are not petitioners and therefore are not before the court."[12] The Court retained jurisdiction to consider any award of fees and costs under § 303(i)(1).[13]

McMillan sought reconsideration of the Court's statement in the June 4 Memorandum Opinion that Sun River, Schmidt, and Wafford were not petitioners presently before the Court.[14] In an August 22, 2013 Memorandum Order, the Court considered and distinguished, in detail, the cases upon which McMillan relied and concluded again that Sun River, Schmidt, and Wafford were not petitioners within the meaning of § 303(i). Therefore, the Court denied McMillan's reconsideration request.[15] The Court also noted that even if Schmidt and Wafford could be considered petitioners, McMillan would have to file an adversary proceeding against them for such relief.[16] On August 27, 2013, the Court entered a judgment dismissing the involuntary

---

[10] *Aigner v. McMillan*, 2013 WL 2445042, at *5-6. Although the parties had stipulated that the alleged debtor had fewer than twelve creditors, the June 4 opinion did not address Maestri's status as a petitioning creditor under 11 U.S.C. § 303(c).

[11] *Id.* at *5.

[12] *Id.* at *4 n.20.

[13] *Id.* at *7.

[14] *Motion for Attorneys Fees, Costs and Damages Pursuant to 11 U.S.C. § 303(i) and to Amend Order Pursuant to Fed. R. Bankr. Proc. 59 (If Necessary)*, Bankr. ECF No. 72. Through this motion, McMillan also asked for attorney's fees, costs, damages, and other relief, but the Court reserved consideration of those issues for another day.

[15] *Memorandum Order* (J. Lynn), Bankr. ECF No. 86 (distinguishing *Orange Blossom Ltd. P'ship v. So. Cal. Sunbelt Developers, Inc. (In re So. Cal. Sunbelt Developers, Inc.)*, 608 F.3d 456 (9th Cir. 2010); *Rosenberg v. DVI Receivables, XIV, LLC (In re Rosenberg)*, Bankruptcy No. 09-13196-BKC-AJC, Adversary No. 10-3812-BKC-AJC-A, 2012 WL 3990725 (Bankr. S.D. Fla. Sept. 11, 2012); *Rosenberg v. DVI Receivables, XIV, LLC (In re Rosenberg)*, 471 B.R. 307 (Bankr. S.D. Fla. 2012); *In re Oakley Custom Homes, Inc.*, 168 B.R. 232 (Bankr. D. Colo. 1994)).

[16] *Id.* at 11 n.43. The Court noted that it was leaving for another day the question whether Maestri was a petitioner under § 303(i). *Id.* at 11 n.44.

petition.[17]

McMillan appealed, and the District Court affirmed after concluding that this Court did not have *in personam* jurisdiction over Schmidt and Wafford because they did not appear as parties in the contested involuntary proceeding and had not been served with process through a formal adversary proceeding.[18] Although the District Court said it was unnecessary to reach the issue of whether Schmidt and Wafford were "petitioners," the court nevertheless concluded that this Court did not commit reversible error in concluding that Schmidt and Wafford were not "petitioners."[19]

On further appeal, the Fifth Circuit affirmed, concluding that the only avenue by which McMillan could seek relief under § 303(i) against Schmidt and Wafford was through service of process in a formal adversary proceeding.[20] An adversary proceeding was required because Schmidt and Wafford were not "petitioning creditors" and thus were not parties to the contested motion for fees. Because the Fifth Circuit affirmed the District Court on this procedural issue, the Fifth Circuit did not address McMillan's argument that the term "petitioner" in § 303(i) constitutes a broader category of potential parties than the actual "petitioning creditors" that signed and filed the involuntary petition.[21]

---

[17] *Judgment*, Bankr. ECF No. 88. The judgment did not address Maestri's status as a petitioning creditor under § 303(c).

[18] *In re McMillan*, No. 4:13-CV-0807-O, 2014 WL 1032453, at *2 (N.D. Tex. Mar. 18, 2014).

[19] *Id.*

[20] *McMillan v. Schmidt*, No. 14-10458, 2015 WL 4480794, *4 (5th Cir. July 23, 2015).

[21] *Id.* at *3-4.

On August 5, 2015, McMillan filed the present adversary proceeding against Maestri, Schmidt, and Wafford.[22] In his first claim for relief, McMillan requests an award of fees and costs against Maestri under § 303(i)(1) because Maestri is a petitioner who actually signed and filed the involuntary petition.

In his second through fifth claims for relief, McMillan requests an award of fees and costs against Schmidt and Wafford under § 303(i)(1) because Schmidt and Wafford—even though they did not actually sign, file, or join in the involuntary petition—"became" or had "become" petitioners because:

- the Joint Prosecution Agreement ceded control and prosecution of the involuntary petition from Aigner to Schmidt and Wafford.[23]

- Schmidt and Wafford were the principals under the Joint Prosecution Agreement who controlled Aigner as their agent in the bankruptcy case.[24]

- Schmidt and Wafford were Aigner's agents under the Joint Prosecution Agreement for purposes of prosecuting the involuntary petition.

- Schmidt and Wafford were joint venturers with Aigner under Texas law and are therefore jointly and severally liable for the obligations of the joint venture.

In his sixth claim for relief, McMillan requests an award of punitive damages against Maestri, Schmidt, and Wafford under § 303(i)(2) because they allegedly filed the involuntary petition in bad faith.

---

[22] *Complaint for Attorneys Fees, Costs and Damages Pursuant to 11 U.S.C. § 303(i)*, Adv. ECF No. 1 (the "Complaint").

[23] Judge Lynn previously rejected this argument in the Court's August 22, 2013 Memorandum Order.

[24] Judge Lynn also rejected this argument in the Court's August 22, 2013 Memorandum Order.

Schmidt responded to the Complaint by filing his motion to dismiss for failure to state a claim,[25] arguing that because he did not sign and file the involuntary petition, he cannot be liable as a "petitioner" within the meaning of § 303(i).  The parties further briefed the issue in McMillan's response and related brief[26] and in Schmidt's reply.[27]

## II.    Jurisdiction and Venue

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 151, and 157 and the standing order of reference in this district.  This proceeding is core pursuant to 28 U.S.C. § 157(b)(2)(A), (O).  Venue is proper in this district under 28 U.S.C. § 1409(a).

## III.    Analysis

A court may dismiss a complaint if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.[28]  In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.[29]

Even accepting the facts alleged in the Complaint in the light most favorable to McMillan, the Court cannot grant him relief against Schmidt because Schmidt was not a

---

[25] *Defendant Donal R. Schmidt's Memorandum in Support of Motion to Dismiss for Plaintiff's Failure to State a Claim (Rule 12(b)(6))*, Adv. ECF No. 8.

[26] *Response to Motion to Dismiss*, Adv. ECF No. 17; *Brief in Support of Response to Motion to Dismiss*, Adv. ECF No. 17-1.  According to McMillan, Schmidt's only argument is that this Court cannot grant relief because the District Court and Fifth Circuit have already ruled on the issue.  *Brief in Support of Response to Motion to Dismiss* at 4, 6-8.  Schmidt's arguments are broader than McMillan suggests.  Although the Court disagrees with Schmidt's preclusion argument and does not address it further, Schmidt also argues directly that he is not a petitioner under § 303(i) because he did not file the involuntary petition.

[27] *Defendant Donal R. Schmidt's Reply to Plaintiff's Response to Motion to Dismiss for Plaintiff's Failure to State a Claim (Rule 12(b)(6))*, Adv. ECF No. 18.

[28] *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

[29] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

"petitioner" within the meaning of § 303, and the statute allows relief only against "petitioners." The text, structure, purpose, and history of § 303 together compel this conclusion.

> **A. In a case that does not involve a partnership debtor or a debtor subject to a foreign proceeding, the text of § 303 limits the term "petitioners" to the petitioning creditors who actually signed and filed the involuntary petition, or who later joined in the petition.**

Section 303 of the Bankruptcy Code governs involuntary bankruptcy petitions. Several subsections are relevant here. First, under subsection (b), an involuntary case against a person is commenced by "the filing with the bankruptcy court of a petition" under Chapter 7 or 11 of the Bankruptcy Code.[30] A party files an involuntary petition by—in relevant part—signing the involuntary petition under penalty of perjury and, if represented, having counsel sign the petition.[31]

Subsection (b) continues: A petition against a debtor may be filed by three or more holders of unsecured, noncontingent, undisputed claims aggregating at least $15,325, or if there are fewer than twelve such creditors, by a single holder.[32] A petition against a partnership debtor may be filed by fewer than all of the general partners, or if all the general partners are themselves in bankruptcy, by a general partner in the partnership, by the trustee of such general partner, or

---

[30] 11 U.S.C. § 303(b).

[31] *See* FED. R. BANKR. P. 1002 (petition filed with clerk to commence case); L.B.R. 1002-2 (recognizing that petitions are a form of pleading that must be signed by unrepresented individuals or by counsel for represented parties); FED. R. BANKR. P. 1008 (requiring petition to be verified or contain an unsworn declaration under 28 U.S.C. § 1746); L.B.R. 5005-1 (requirements for filing papers include contact information for party or attorney filing a pleading, and if filed by an attorney, the names of parties represented); Official Form B5 (involuntary petition form containing unsworn declaration language for each petitioner) (superseded on Dec. 1, 2015); Official Forms B105 and B205 (involuntary petition forms containing unsworn declaration language for each petitioner) (eff. Dec. 1, 2015); FED. R. BANKR. P. 9011 (requiring petition and other pleadings and papers to be signed by attorney or unrepresented party).

[32] 11 U.S.C. § 303(b)(1), (b)(2).

by the holder of a claim against the partnership.[33] A petition against a debtor involved in a foreign proceeding may be filed by a foreign representative of the estate.[34] Section 303(b) thus recognizes three categories of parties that are potentially eligible to file an involuntary petition: (1) unsecured creditors with undisputed, noncontingent claims, (2) general partners of a partnership debtor, and (3) foreign representatives of a debtor in a foreign proceeding.

Subsection (c) provides that before the case is dismissed or relief is ordered against the alleged debtor, an unsecured creditor "may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b)" of § 303.[35] This is the one and only time the term "petitioning creditor" is used in § 303. This provision permits unsecured creditors who did not originally file the involuntary to join in it and be treated as if they were a petitioning creditor.

Subsection (e) provides that a bankruptcy court may require "the petitioners under this section" to post a bond to indemnify the debtor for any fees, costs, or damages that may be later awarded to the debtor under subsection (i) if the case is dismissed.[36] This is the first time the term "petitioners" is used in § 303. By referring to "petitioners" rather than to "petitioning creditors," the provision indicates (logically) that all three categories of petitioning parties under subsection (b)—unsecured creditors, general partners, and foreign representatives—may be required to indemnify the debtor for fees, costs, and expenses if the case is dismissed.

---

[33] 11 U.S.C. § 303(b)(3). For convenience, when referring to these parties going forward, the Court will simply refer to "general partners."

[34] 11 U.S.C. § 303(b)(4).

[35] 11 U.S.C. § 303(c).

[36] 11 U.S.C. § 303(e).

Subsection (i) provides that after a contested dismissal of an involuntary petition, a bankruptcy court may grant judgment for fees and costs against "the petitioners,"[37] and a judgment for actual and punitive damages against "any petitioner that filed the petition in bad faith."[38] This provision necessarily refers to "petitioners" and "any petitioner" rather than to "petitioning creditors" and "any petitioning creditor" because the provision applies broadly to any party who signed and filed or joined in the involuntary under § 303(b) or (c) and who may be required to post a bond under § 303(e)—that is, it applies to unsecured creditors, general partners, and foreign representatives who signed and filed or joined in the involuntary, as the case may be.

In this case, Aigner is the unsecured creditor who signed and filed the involuntary petition under penalty of perjury pursuant to § 303(b). Later, Fusion Labs, Inc. and Lawrence Maestri joined in the involuntary petition under penalty of perjury pursuant to § 303(c), having the same effect as if they were petitioning creditors. The Court dismissed Fusion Labs as a petitioning creditor with McMillan's agreement. Under the plain language of § 303, because this bankruptcy does not involve a partnership debtor or a debtor in a foreign proceeding, the petitioning creditors Aigner and Maestri are the only "petitioners" against whom § 303(i) relief can be awarded.

McMillan argues that Schmidt and Wafford are liable under § 303(i) because they "became" petitioners by controlling Aigner, acting as Aigner's principal or agent, or being joint venturers with Aigner. The plain language of § 303(i), however, forecloses those arguments. Schmidt and Wafford did not sign and file the involuntary petition under penalty of perjury

---

[37] 11 U.S.C. § 303(i)(1).

[38] 11 U.S.C. § 303(i)(2).

under § 303(b) and they did not join the petition under penalty of perjury under § 303(c). Therefore, they were not petitioning creditors and cannot be "petitioners" under the literal language of the statute.

McMillan cites *Rosenberg*[39] for the proposition that the focus should be on the "de facto petitioning creditor" rather than on who signed the petition. But the Eleventh Circuit in *Rosenberg* did "not view [the] case as presenting an issue of third party or agency liability— rather, the narrow question is whether [Lyon Financial Services, a creditor] was in fact the *actual petitioner* here and thus properly held liable under § 303(i)(1)."[40] The court concluded that Lyon Financial Services was the actual "petitioning creditor" because it approved the involuntary, its officer signed the petition with Lyon Financial's address and fictitious business name under her signature, and it listed other parties as the petitioning creditors without their authorization.[41] The unique facts present in *Rosenberg* are not present here.

In contrast, the Fifth Circuit has already concluded that Schmidt and Wafford were not the actual "petitioning creditors" and were not before this Court on a motion for fees because they did not sign and file the involuntary petition.[42] The Fifth Circuit made "no pronouncement" on whether "petitioner" may be broader than "petitioning creditor" under the Bankruptcy Code.[43] As noted above, "petitioner" is indeed broader than "petitioning creditor" because a petitioner could also be a general partner of a partnership debtor or a foreign representative of a debtor's estate in a foreign proceeding. But the term "petitioner" is no broader than that. Because there is

---

[39] *DVI Receivables, XIV, LLC v. Rosenberg (In re Rosenberg)*, 779 F.3d 1254, 1268 (11th Cir. 2015).

[40] *Id.* (emphasis added).

[41] *Id.* at 1258, 1269 & n.11.

[42] *McMillan v. Schmidt*, No. 14-10458, 2015 WL 4480794, *4 (5th Cir. July 23, 2015).

[43] *Id.*

no partnership debtor or foreign estate in this bankruptcy, Schmidt and Wafford could be petitioners only if they were actual petitioning creditors or joining creditors. They were neither.

McMillan also cites *In re Oakley Custom Homes,*[44] where the court in a contested involuntary petition awarded relief against counsel for the petitioners and against an agent of the petitioners. But it is unclear from that opinion whether the court relied on Bankruptcy Rule 9011, § 303(i), or other statutory authority in awarding relief against counsel for the petitioners.[45] It is also unclear upon what authority the court relied to award relief against the petitioners' agent or whether the agency theory of liability was even contested. *Oakley Custom Homes* simply has no persuasive analysis.

This Court instead follows a long line of cases concluding that the plain language of § 303 allows relief only against the actual petitioning parties who signed and filed or joined in the involuntary petition.[46]

**B. Section 303 is structured as a comprehensive remedial scheme that addresses a full range of *specific* remedies to protect an alleged debtor.**

Section 303 of the Bankruptcy Code is structured as a self-contained statute to deal with all aspects of an involuntary bankruptcy. Section 303 governs who may be an involuntary debtor

---

[44] 168 B.R. 232 (Bankr. D. Colo. 1994).

[45] *Id.* at 241 (citing, among other authorities, Bankruptcy Rule 9011 and 28 U.S.C. § 1927).

[46] *See, e.g., In re Glannon*, 245 B.R. 882, 892-93 (D. Kan. 2000) (concluding that attorneys for petitioning creditors cannot be liable under plain language of § 303(i); noting that attorneys may be liable under Federal Civil Rules instead); *In re Int'l Mobile Advert. Corp.*, 117 B.R. 154, 158 (Bankr. E.D. Pa. 1990) (attorney for petitioning creditor may be liable under Bankruptcy Rule 9011, but not under § 303(i) because counsel was not a petitioner); *In re Fox Island Square P'ship*, 106 B.R. 962, 967 (Bankr. N.D. Ill. 1989) (§ 303(i) "does not provide for an award against the petitioners' attorney."); *In re Advance Press & Litho, Inc.*, 46 B.R. 700, 706 (Bankr. D. Colo. 1984) (§ 303(i) not applicable to counsel: "When a judgment is entered against creditors whose actions were predicated upon faulty legal advice, the creditor's remedy is elsewhere to be resolved."); *In re Ramsden*, 17 B.R. 59, 61 (Bankr. N.D. Ga. 1981) ("The court finds no authority to assess the costs and damages against the attorney whose acts of omission and commission caused these frivolous actions to be filed and heard. The judgment authorized under the statute seems directed only against offending petitioners."). *See also In re Commonwealth Sec. Corp.,* No. 06-30746-SGJ-7, 2007 WL 309942, at *8 (Bankr. N.D. Tex. Jan. 25, 2007) (noting that "Section 303(i) technically does not permit for a sanction against a petitioner's attorney").

and under which Chapters of the Bankruptcy Code.[47] It explains how to commence an involuntary bankruptcy, who may be a petitioner, and who may answer the petition.[48] It governs the conduct and business of a debtor after the petition is filed but before an order for relief is entered.[49] It explains when and under what circumstances a bankruptcy court may enter an order for relief against the debtor, or instead dismiss the petition.[50] And most important for present purposes, § 303 contains four specific protections for an alleged debtor.

First, as noted above, the court may require any petitioner to post a bond to indemnify the debtor for any fees, costs, or damages that may be later awarded to the debtor under subsection (i) if the case is dismissed.[51] Second, the statute allows the court to seal all court records related to a dismissed involuntary petition against an individual if the petition is false or contains any materially false, fictitious, or fraudulent statement.[52] Third, if the court dismisses an involuntary petition against an individual, the court may enter an order prohibiting consumer reporting agencies from making any consumer report that contains any information related to the involuntary bankruptcy.[53] Fourth, the court may award fees, costs, and damages against petitioners in a dismissed case, as described in detail above.[54]

These provisions together reflect a comprehensive remedial scheme that provides a full range of protections for the debtor. The Ninth Circuit viewed § 303 the same way in *In re*

---

[47] 11 U.S.C. § 303(a).

[48] 11 U.S.C. § 303(b), (c), (d).

[49] 11 U.S.C. § 303(f)-(g).

[50] 11 U.S.C. § 303(h), (j).

[51] 11 U.S.C. § 303(e).

[52] 11 U.S.C. § 303(k)(1).

[53] 11 U.S.C. § 303(k)(2).

[54] 11 U.S.C. § 303(i).

*Miles*,[55] where the court concluded that § 303(i) completely preempts state law tort causes of action for damages predicated upon the filing of an involuntary petition.  The court affirmed the dismissal of removed state law tort causes of action by the alleged debtor's relatives against the petitioners and their counsel.  "[W]e can infer from Congress's clear intent to provide damage awards only to the debtor in federal proceedings predicated upon the bad faith filing of an involuntary petition that Congress did not intend third parties to be able to circumvent this rule by pursuing those very claims in state court."[56]

The sound logic of the *Miles* opinion applies here as well.  The Court can infer from Congress's clear intent to provide damage awards only against the actual petitioners who signed and filed the involuntary petition that Congress did not intend an alleged debtor to be able to circumvent this rule by arguing that third parties somehow become "petitioners" by virtue of state law concepts of agency and joint venture.

In an aside, the dissenting Fifth Circuit judge in *McMillan* suggested "serious consideration" of the possibility that § 303(i) implicitly incorporates common law doctrines of agency liability, noting that other statutes have incorporated common law doctrines.[57]  All or most of those statutes, however, provide for tort-like actions that incorporate ordinary tort-related

---

[55] 430 F.3d 1083, 1086 (9th Cir. 2005).

[56] *Id.* at 1091.  *Accord In re VII Holdings Co.,* 362 B.R. 663, 668 (Bankr. D. Del. 2007) (nondebtors, including nonpetitioning creditors, may not recover damages for a bad-faith filing).

[57] *McMillan v. Schmidt*, No. 14-10458, 2015 WL 4480794, *6 (5th Cir. July 23, 2015) (Dennis, C.J., dissenting) (citing *Meyer v. Holley*, 537 U.S. 280 (2003) (Fair Housing Act); *Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982) (Sherman Act); *Wood v. Holiday Inns, Inc.*, 508 F.2d 167 (5th Cir. 1975) (Fair Credit Reporting Act); *Paul F. Newton & Co. v. Tex. Commerce Bank*, 630 F.2d 1111 (5th Cir. 1980) (Securities Exchange Act); *Chowdhury v. Worldtel Bangladesh Holding, Ltd.*, 746 F.3d 42 (2d Cir. 2014) (Torture Victim Protection Act); *1–800–Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229 (10th Cir. 2013) (Lanham Act)).

vicarious liability rules, or expressly provide that the rights in the statute are cumulative of any existing at law or in equity.[58]

Section 303 has no language expanding its reach to include state law claims or theories of liability, and this Court agrees with the Ninth Circuit that "mischief . . . can occur by the wholesale application of common law tort concepts into an exclusively bankruptcy statutory cause of action."[59] In *Maple-Whitworth*, the bankruptcy court erred by applying common law tort principles to impose joint and several liability on all petitioners as a class, rather than exercising the discretion given by § 303(i) to consider the totality of the circumstances in imposing liability on, if appropriate, fewer than all petitioners. "Tort concepts and class theories of liability are irrelevant to these discretionary and flexible considerations."[60]

This Court agrees that state law concepts of liability, such as agency and joint venture, are irrelevant to the determination whether to award relief under § 303(i). Section 303 provides flexibility in determining how to protect an individual alleged debtor such as McMillan and which petitioners may be liable, but the self-contained structure of the statute shows that relief is available only against the actual petitioners who signed and filed the involuntary petition.

---

[58] *See, e.g., Meyer v. Holley*, 537 U.S. at 285 (interpreting Fair Housing Act: "[T]he Court has assumed that, when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules."); *Paul F. Newton & Co. v. Tex. Commerce Bank*, 630 F.2d at 1118 (concluding that common law agency principles, including the doctrine of respondeat superior, remain viable in actions brought under Securities Exchange Act; noting that section 28 of the Act expressly makes the rights and liabilities imposed by the Act cumulative of any existing at law or in equity).

[59] *In re Maple-Whitworth, Inc.*, 556 F.3d 742, 745-46 (9th Cir. 2009) (citing BAP dissenting opinion), *opinion corrected at* 559 F.3d 917 (9th Cir. 2009).

[60] *In re Maple-Whitworth*, 556 F.3d at 746.

### C. Section 303(i) serves a fee-shifting purpose and perhaps a deterrence purpose, both of which are furthered by the statute's specific protections for an alleged debtor.

Section 303(i) primarily is a fee-shifting statute.[61] "[T]he underlying policy purpose is to allow an alleged debtor to recover its reasonable costs and attorney's fees, regardless of whether there was bad faith or improper purpose (in other words, Section 303(i)(1) creates a statutory exception to the usual 'American Rule,' so that the losing involuntary petitioners will pay in the context of an unsuccessful involuntary petition)."[62] Allowing McMillan to seek fees and costs against the actual petitioners, Aigner and Maestri, serves the fee-shifting purpose of the statute.[63]

McMillan argues that § 303(i)'s purpose is, in part, to discourage improper involuntary petitions, noting that consequential and punitive damages may be awarded to the alleged debtor if a petitioner files the petition in bad faith. McMillan may be right, but the Court has previously denied McMillan's request for damages against Aigner under § 303(i)(2) because the Court found that Aigner did not file the petition in bad faith. That finding was not appealed and is now final. And the Court will examine in this adversary proceeding Maestri's intent in filing the involuntary petition. The Court can further any deterrence purpose of § 303 by employing the statute's specific remedies, if necessary, against any bad-faith petitioner.

McMillan further argues that "[d]istinguishing responsibility under § 303(i) on so little a basis as whether a person actually signed an involuntary petition only serves to promote the

---

[61] *In re Commonwealth Sec. Corp.*, No. 06-30746-SGJ-7, 2007 WL 309942, at *6 (Bankr. N.D. Tex. Jan. 25, 2007). Section 303(i)'s primary policy purpose is thus different than that of Rule 9011, which is not fee shifting but to deter wrong. *Id.* "With Rule 9011, the Rule 9011 movant has no entitlement to fees or any other particular sanction." *Id.*

[62] *Id.* at *6.

[63] The Court, Judge Lynn presiding, previously reserved its ruling on McMillan's requests for fees and costs under § 303(i)(1). *Aigner v. McMillan*, No. 11–47029–DML–7, 2013 WL 2445042, at *7 (Bankr. N.D. Tex. June 4, 2013); *Memorandum Order* at 2, Bankr. ECF No. 86. The Court has not yet ruled on that issue in this adversary proceeding.

abuse which Congress intended to deter."[64] McMillan is wrong to trivialize the signing and filing of papers under penalty of perjury. Those who sign and file an involuntary petition assume the potential rewards of being a petitioner, such as an administrative claim for fees and expenses incurred in the process.[65] But those who sign and file an involuntary petition also assume the risks, including a potential judgment for fees, costs, and damages.[66]

### D. Section 303(i)'s limited legislative history reflects Congress's intent to protect alleged debtors from actual petitioning creditors.

The limited legislative history to § 303(i) reflects an intent to protect an alleged debtor from actual petitioning creditors. The relevant Senate and House Reports state that "if a *petitioning creditor* filed the petition in bad faith, the court may award the debtor any damages proximately caused by the filing of the petition. These damages may include such items as loss of business during and after the pendency of the case, and so on."[67] The same Reports state that § 303(e)'s bonding requirement is designed to "discourage frivolous petitions" as well as "spiteful petitions, based on a desire to embarrass the debtor . . . or to put the debtor out of business without good cause . . . ."[68]

This legislative history reflects deliberation by Congress on how best to protect an alleged debtor from improper involuntary petitions by a "petitioning creditor." Nothing in the legislative history reflects an intent to provide protections against parties other than a "petitioner" or "petitioning creditor."

---

[64] *Response to Motion to Dismiss* at 10.

[65] *See* 11 U.S.C. § 503(b)(3)(A) (allowing a petitioning creditor under § 303 to seek an administrative expense claim for its actual, necessary expenses).

[66] *See* 11 U.S.C. § 303(i).

[67] H.R. Rep. No. 95-595, at 324 (1977) (emphasis added), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6280; S. Rep. No. 95-989, at 34 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5820.

[68] H.R. Rep. No. 95–595, at 323 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6279; S. Rep. No. 95-989, at 33 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5819.

Furthermore, Congress presumably is aware of the litany of cases holding that § 303(i) does not allow relief against third parties, such as attorneys,[69] yet it has never amended the statute since its 1978 enactment to allow relief against third parties.[70]

In short, the legislative and statutory histories are consistent with the plain language of § 303 and do not support McMillan's argument that "petitioner" includes third parties such as Schmidt and Wafford.

### IV.     Conclusion

Even accepting the facts alleged in the Complaint in the light most favorable to McMillan, the Court cannot grant him relief against Schmidt because Schmidt was not a petitioner within the meaning of § 303, and the statute allows relief only against petitioners. Therefore, the Court will enter a separate order granting Schmidt's motion to dismiss.

### END OF OPINION ###

---

[69] *See supra* note 46.

[70] Section 303(i)'s predecessors likewise appear to have allowed for relief only against the parties to the involuntary petition. *See In re Ross*, 135 B.R. 230, 235-37 (Bankr. E.D. Pa. 1991) (reviewing § 303(i) history as well as predecessor statutes and Bankruptcy Rule 115(e), which allowed fees and costs to the "prevailing party").